UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| Mafcote Industries, Inc and Royal Consumer Products, LLC,<br>　　*Plaintiffs*,<br><br>　　　　　*v.*<br><br>Milan Express Co., Inc.,<br>　　*Defendant*. | Civil No. 3:09cv1555 (JBA)<br><br><br><br><br>September 7, 2011 |

RULING ON MOTION FOR SUMMARY JUDGMENT

Plaintiffs Mafcote Industries, Inc. ("Mafcote") and Royal Consumer Products, LLC ("Royal Consumer") sued Defendant Milan Express Company, Inc. ("Milan Express") pursuant to the Carmack Amendment, 49 U.S.C. § 14706, for loss and/or damages to, as well as late delivery of, seventy-four shipments of goods transported from Royal Consumer's facility in Louisville, Kentucky. Milan Express moves [Doc. # 40] for partial summary judgment on sixty–two of Plaintiffs' claims that were filed more than nine months after delivery and claims of administration fees. For the reasons stated below, Defendant's motion for summary judgment will be granted.

I.　　Factual Background

　　A.　　The Agreement for Transportation

In November 2006, Milan Express commenced negotiations for an Agreement for Transportation ("Agreement") with Mafcote. (McDole Aff., App. A to Def.'s Loc. R. 56 (a)1 Stmt. [Doc. # 48] ¶ 5.) Non–party Scott Traffic Consultants, Inc. ("Scott Traffic") handled all of the negotiations on behalf of Mafcote. (*Id.*) Once Mafcote accepted Milan Express's pricing structure, Scott Traffic advised Milan Express to input the pricing structure into Mafcote's standard contract, sign it and send it back to Scott Traffic. (*Id.* ¶ 5.) On or about

November 13, 2006, Milan and Mafcote executed the Agreement, whereby Milan Express agreed to provide inter– and intrastate transportation services for Mafcote's goods as well as the goods of its affiliated companies. (McDole Aff., ¶ 9; Ex. 3 to Bernstein Dep., App. B to Def.'s Loc. R. 56 (a)1 Stmt.)

The Agreement for Transportation did not list Royal Consumer Products as an affiliated company, a wholly–owned subsidiary corporation, or a division of Mafcote. (Bernstein Dep. 16:25–17:18; Ex. 3 to Bernstein Dep.) However, Plaintiffs maintain that Royal Consumer Products is nonetheless a Party to the Agreement because it is the same entity as Royal Lace, which is listed in Appendix B of the Agreement (Bernstein Aff., App. C to Pl.'s Loc. R. 56 (a)2 Stmt. ¶¶ 5–6).

Under the terms of the Agreement, Milan Express agreed to promptly and efficiently receive, transport and deliver the goods of the shipper. (Ex. 3 to Bernstein Dep.) Furthermore, Milan Express agreed to assume the liability of an interstate motor carrier under 49 U.S.C. § 14706 from the time it received goods until proper delivery was made. (*Id.*)

After the Agreement was executed, Milan Express accepted shipments of goods from Royal Consumer at its facility in Louisville, Kentucky and transported those goods interstate to various locations. (McDole Aff. ¶ 12.) The Parties continued to do business under this Agreement until the end of 2007. (*Id.*)

B. Bills of Lading

For each of the seventy–four interstate shipments of goods for which they seek recovery, Royal Consumer printed a standard shipping document, or bill of lading, at Royal Consumer's Louisville facility and tendered the document to Milan Express for its signature.

(Bernstein Dep. at 28:22–31:9; Ex. 5 to Bernstein Dep.) The Parties stipulated through counsel that each of the shipping documents contained the same language other than the descriptions of the product, handwritten notes or signatures and payment terms. (Bernstein Dep. at 30:5–25.) Specifically, each bill of lading contained the following:

> (a) Milan Express is listed as the carrier.
> (b) In the upper left–hand side each bill of lading states, "From Royal Consumer Products."
> (c) The permanent office address of the shipper is listed as Royal Consumer Products at 1450 South 10th Street, Louisville, Kentucky.
> (d) There is a place for Royal Consumer, as the shipper, to sign and a place for the agent which was Milan Express, the carrier, to sign at point of origin.
> (e) The following preprinted language appears:
>
> It is mutually agreed as to each carrier of all or any said property over all or any portion of said route to destination, and as to each party at the time interested in all or any said property that every service to be performed hereunder shall be subject to all the terms and conditions of the Uniform Domestic Straight Bill of Lading set forth (1) on Uniform Freight Classification in effect on the date hereof if this is a rail or rail–water shipment; or (2) in the applicable motor carrier classification or tariff if this is a motor carrier shipment.
>
> Shipper hereby certifies that he is familiar with all the terms and conditions of the said bill of lading including those on the back thereof, set forth in the classification or tariff which governs the transportation of this shipment and the said terms and conditions are hereby agreed to by the shipper and accepted for himself and his assigns.

(Ex. 5 to Bernstein Dep.)

The bills of lading Royal Consumer issued expressly incorporated the Uniform Domestic Straight Bill of Lading in the applicable motor carrier classification or tariff. (*Id.*) Milan Express published a Rules Tariff MXLP 190 setting forth Milan Express's rates, applicable classifications, rules and practices for shipments transported by Milan Express

during the relevant period. (Def.'s Loc. R. 56 (a)1 Stmt. ¶ 25; McDole Aff. ¶ 14; App. 4 to McDole Aff.) The National Motor Freight Classification ("NMFC") Tariff Series 100 governed Milan Express's Rules Tariff during the relevant period. (Def.'s Loc. R. 56 (a)1 Stmt. ¶ 26; McDole Aff. ¶ 15; App. 4 to McDole Aff, at Item 100). The NMFC published the Uniform Straight Bill of Lading between November 2006 and February 16, 2008 for all of its participating members, including Milan Express. (Def.'s Loc. R. 56 (a)1 Stmt. ¶ 28; McDole Aff. ¶ 17; App. 6 to McDole Aff.).

Pursuant to Section 3 of the Uniform Straight Bill of Lading, shippers who wish to file claims for loss must fulfill certain filing requirements:

> (a) As a condition precedent to recovery, claims must be filed in writing: any participating carrier having sufficient information to identify the shipment.
> (b) All claims for loss or damage must be filed within nine months after the delivery of the property (or, in the case of export traffic, within nine months after delivery at the port of export), except that claims for failure to make delivery must be filed within nine months after a reasonable time for delivery has elapsed.
> (c) Suits for loss, damage, injury or delay shall be instituted against any carrier no later than two years and one day from the day when written notice is given by the carrier to the claimant that the carrier has disallowed the claim or any part or parts of the claim specified in the notice. Where claims are not filed or suits not instituted thereon in accordance with the foregoing provisions, no carrier shall be liable, and such claims shall not be paid.

(App. 6 to McDole Aff.)

Plaintiffs do not contest that the bills of lading for each of its seventy–four claims specifically incorporate Milan Express's tariff, that Milan Express's tariff expressly

4

incorporates the Uniform Domestic Straight Bill of Lading, or that the Uniform Domestic Straight Bill of Lading contains a nine–month claim limitation. (*See* Pl.'s Loc. R. 56 (a)2 Stmt. ¶¶ 25-29.)

C.   Claims

Between May 2007 and March 2009, Plaintiffs submitted seventy–four claims to Milan Express seeking a total recovery of $43,724.54. All of the shipments in dispute were transported interstate.[1] (McDole Aff. ¶ 17; App. 7 to McDole Aff.; Pl.'s Loc. R. 56 (a)2 Stmt., ¶ 30.)

In January 2009, Royal Consumer submitted fifty–seven of these claims for a total of $39,117.58 for interstate shipments to various Wal–Mart facilities in 2007 ("Wal–Mart Claims"). (Bernstein Dep. at 60:1–61:6, 62:25–63:3; McDole Aff. ¶ 20; Ex. 7 to Bernstein Dep. at 82–342.) Within the total amount claimed, Royal Consumer included $6,914.55 for administration fees for filing the claims against Milan Express. Defendant claims that it did not agree to these administration fees. (Def.'s Loc. R. 56 (a)1 Stmt. ¶ 36; McDole Aff. ¶ 22.) Plaintiffs' corporate representative acknowledged that he did not know of an agreement between the Parties for the administrative fees assessed. (Bernstein Dep., 49:25–50:3.)

In March of 2009, Royal Consumer submitted five additional claims totaling $1,210.81 for interstate shipments to SuperValu in 2007, another Royal Consumer customer. (Bernstein Dep. at 46:13–49:2; Ex. 7 to Bernstein Dep., Bates Nos. 343–365.) Royal Consumer included $221.57 for administration fees which Defendant again maintains it

---

[1] While the second count of Plaintiffs's Amended Complaint included a state law breach of contract claim arising out of alleged intrastate shipments of goods within Kentucky, Plaintiffs concede that none of the shipments in question were in fact intrastate shipments. (Pl.'s Response, at 11–12.)

never agreed to (Def.'s Loc. R. 56 (a)1 Stmt. ¶ 39) and which Mr. Bernstein acknowledged that Milan Express never agreed to on the SuperValu claims. (Bernstein Dep. at 52:11–14.)

Between May 2007 and May 2008, Plaintiffs submitted the remaining twelve claims for interstate shipment delivered to various customers in the total amount of $3,396.15. (McDole Aff. ¶ 26.) Of that amount, $556.03 is for administration fees. Milan Express maintains that it never agreed to these administration fees either. (*Id.*)

II. Discussion

Defendant Milan Express argues that because its tariff contains a nine–month claim filing restriction, it is entitled to summary judgment with respect to sixty–two of the claims which were not filed within nine months after delivery. Milan Express also seeks summary judgment in its favor as to the administration fees totaling $7,692.18 added to each of the seventy–four claims. Milan Express also argues for summary judgment in its favor on the second count of Plaintiffs's amended complaint because all of the shipments in question were transported interstate, and thus Plaintiffs may only recover against Milan Express under the Carmack Amendment.

Plaintiffs argue in response that the Agreement is the only contract governing the dispute and since it does not contain a time limit within which to file, their claims were not untimely and should not be dismissed. Plaintiffs do not dispute that Defendant had not previously agreed to be charged administration fees on any of the seventy-four claims. Moreover, Plaintiffs concede that none of the claims currently in question were for intrastate shipments.

A.     Untimely Claims

Milan Express argues that partial summary judgment is appropriate as to Plaintiffs' sixty–two claims submitted in January and March of 2009 because Plaintiffs exceeded the time limits for claim submission under "the Carmack Amendment, Milan's applicable tariffs in effect, the Royal bills of lading that govern each shipment, and 49 C.F.R. § 370.3(a)." (Def. Mot. at 4.) Plaintiffs respond that their claims are not time–barred because the Agreement for Transportation is the controlling contract and does not require Plaintiffs to file claims with the Defendant within any particular time–frame. (Pl.'s Response at 4–7.)

*1.     The Carmack Amendment and Time Limitations for Claims*

The Carmack Amendment requires that carriers provide at least a nine–month claims period and a minimum of two years for filing suit. 49 U.S.C. § 14706. Further, pursuant to 49 C.F.R. § 370.3(a), "[a] claim for loss or damage to baggage or for loss, damage, injury or delay to cargo, shall not be voluntarily paid by a carrier unless filed . . . within the specified time limits applicable thereto and as otherwise may be required by law, the terms of bill of lading, and all tariff provisions thereto."

The District Court of Connecticut and the Second Circuit have strictly applied the claim–filing requirements contemplated by the Carmack Amendment to the Interstate Commerce Act and the concomitant regulations of the Interstate Commerce Commission. *See Imperial News Co. v. P–I–E–Nationwide, Inc.*, 905 F. 2d 641, 644 (2d Cir. 1990) (construing strictly a bill of lading provision that a claim be filed "within nine months after a reasonable time for delivery has elapsed" and granting summary judgment for defendant due to plaintiff's untimely filing thirteen months after delivery); *Pathway Bellows, Inc. v. Blanchette*, 630 F. 2d 900, 905 (2d. Cir. 1980) (holding plaintiff's claim was untimely because

its claim letter was received one day after the nine month period); *St. Paul Fire & Marine Ins. Co. v. Triad Installation & Moving Services, Inc.*, 157 F. Supp. 2d 223, 225–26 (D. Conn. 2001) (granting summary judgment for defendant when plaintiff failed to comply with the claim filing requirements specified by the bills of lading and the provisions of the Carmack Amendment).

Despite the severity of the consequences for untimely claims, it is in the interest of all parties and consistent with the broad goals of the Carmack Amendment that the provisions of the Carmack Amendment and the bills of lading it governs be consistently and predictably applied. *St. Paul Fire & Marine Ins. Co.*, 157 F. Supp. 2d at 226. Where Plaintiffs have failed to meet the minimum filing requirements for any claim within the time prescribed by the governing contract or tariff, Plaintiffs will have surrendered any cause of action to recover damages on that claim.

The Carmack Amendment, however, does not set forth a time limitations period and only provides for a minimum claims period, not an automatic requirement that shippers file their claims within nine months. *Dress Barn, Inc. v. LTA Group, Inc.*, 822 F. Supp. 88 (D. Conn. 1993) ("A plain reading of the statutory language [of the Carmack Amendment] . . . does not require a claimant [to] file its claim within nine months."). Only when carriers have integrated a compliant limitation period for notice of claim into a contract with the shipper have courts strictly applied the agreed–to time provisions.

Milan Express argues that the bills of lading that Royal Consumer issued with respect to each of the seventy–four shipments are the governing contracts between the parties. (Def. Reply at 4–5.) As each bill of lading expressly incorporated Milan Express's tariff, which incorporated the Uniform Straight Bill of Lading in the applicable motor carrier classification,

they all contained a nine month notice–of–claim limitation. (*See* Def.'s Loc. R. 56 (a)1 Stmt. ¶¶ 25–29.) In their Local Rule 56(a)2 Statement, Plaintiffs admit that the bills of lading specifically provided for a nine–month filing period through the incorporation of Milan Express's tariff. (*See* Pl.'s Loc. R. 56 (a)2 Stmt. ¶¶ 25–29.) If each bill of lading is considered to be a contract governing the relationship between Milan Express and Royal Consumer, then each of the sixty–four untimely filed claims must be dismissed.

### 2. *The Merger Clause*

Although Plaintiffs admit that the bills of lading include a nine–month period for filing claim notices, they contend that by virtue of a merger clause the Agreement is a completely integrated contract representing the entire agreement among the parties and cannot be altered by extrinsic evidence. Plaintiffs further argue that because the Agreement provides no time period to file claims and does not incorporate the terms and conditions of Defendant's tariffs or the bills of lading, Plaintiffs' claims are not time–barred. Additionally, Plaintiffs argue that the terms and conditions contained in both the Defendant's tariffs and in the bills of lading are in conflict with the Agreement.

> The merger clause contained in Section 15 of the Agreement reads as follows:
>
> ENTIRE AGREEMENT. The Agreement contains the entire agreement between the parties. All prior discussions, understandings, negotiations, and Agreements are merged herein. This Agreement shall not be altered except in writing, signed by both parties.

(App. A to Pl.'s Resp.) Parties' inclusion of a merger clause, such as the one contained in the Agreement, evinces their intent to create a fully integrated contract that cannot be contradicted by extrinsic evidence. *See Connecticut Light & Power v. NRG Power Marketing*, 497 F. Supp. 2d 352, 361 (D. Conn. 2007) ("The general rule of contract law remains that a

9

merger clause . . . is likely to conclude the issue of whether the agreement is completely integrated.") (internal quotation marks and citations omitted).

Plaintiffs argue that the terms and conditions contained within the bills of lading, including the reference to the Uniform Straight Bill of Lading, are extrinsic to the Agreement and therefore should not be considered. However, the Defendant correctly asserts that the merger clause applies only to discussions, understandings, negotiations and agreements existing prior to or contemporaneous with the Agreement. (Def. Reply at 2–3.) A merger clause is a means of excluding prior or contemporaneous parol evidence from the scope of a contract, but it does not bar consideration of documents comprising subsequent agreements. *Cf. Tempo Shain Corp. v. Bertek, Inc.*, 120 F.3d 16 (2d Cir. 1997) (stating that ordinarily a merger clause provision indicates that the subject agreement is completely integrated and parol evidence is precluded from altering or interpreting the agreement); *Citizens Commc'ns Co. v. Trustmark Ins.*, 303 F. Supp. 2d 197, 210 n.3 (D. Conn. 2004) (rejecting argument that a merger clause in a previous agreement barred consideration of documents constituting a subsequent agreement); 4 WILLISTON ON CONTRACTS § 33.21 (4th ed. 2010) ("[W]hile the presence of a merger clause is presumptive evidence of an integration, it will not necessarily prevent proof of collateral parol agreements, depending on their nature, or conditions precedent."). Furthermore, by its explicit terms, the merger could not merge subsequent agreements under the umbrella of the Agreement for Transportation executed on November 13, 2006. As all of the bills of lading were issued after November 13, 2006 they could not have been merged into the Agreement for Transportation.

According to the Defendant, the bills of lading do not contradict the terms of the Agreement, but are separate and independent contracts governing the relationship between

the two parties. Plaintiffs insist that the Agreement is the full agreement between the parties. The standard for creating a contract is well settled:

> To form a valid and binding contract in Connecticut, there must be a mutual understanding of the terms that are definite and certain between the parties. To constitute an offer and acceptance sufficient to create an enforceable contract, each must be found to have been based on an identical understanding by the parties. If the minds of the parties have not truly met, no enforceable contract exists. An agreement must be definite and certain as to its terms and requirements.

*L & R Realty v. Connecticut Nat'l Bank*, 53 Conn. App. 524, 534–535, 732 A.2d 181 (Conn. App. 1991). Here, the bills of lading contained terms and conditions regulating the parties' conduct and rights with respect to each shipment, which were drafted by Royal Consumer and signed by both parties with the intent to form a contract. Even taken in the light most favorable to the Plaintiffs, the bills of lading are subsequent contracts specifically between Milan Express and Royal Consumer for each individual shipment.

Despite the merger clause, the Agreement for Transportation did not constitute the entire arrangement between the parties as it omitted the products to be shipped, payment terms, volume of shipments, and other basic issues incidental to the parties' relationship. *Cf. L.S. Heath & Son, Inc. v. AT&T Information Sys.*, 9 F.3d 561 (7th Cir. 1993) (applying New Jersey law, the Court held that the master agreement for sale and installation of a computer system was not the parties' complete and exclusive agreement, notwithstanding the merger clause, where the master agreement omitted the subject matter and did not identify any prices, products, services, software applications or configurations.) All of these issues were subsequently covered in the individual bills of lading executed between the parties for each interstate shipment. Moreover, Plaintiffs' current argument also contradicts their own

allegations in the Amended Complaint that Milan Express had breached the bills of lading and that recovery of damages should be based on the information contained in those documents. (Amended Compl. ¶¶ 14–16.)

In addition to Plaintiffs' assertion that the bills of lading do not apply, Plaintiffs also argue that Section 4A of the Agreement conflicts with the Uniform Domestic Straight Bill of Lading and exclusively governs the applicable time limitation for filing claims due to the merger clause. (Pl.'s Response, at 7–9). Section 4A reads:

> SHIPPER shall have the right to offset freight and other charges owed to CARRIER against claims for loss, damage or for overcharge and duplicate payment claims, provided such claims are verified in due course. Carrier shall have no lien for the retention of freight to secure payment of freight charges.

(App. A to Pl.'s Response.) Plaintiffs assert that Section 4A permits them to have their claims paid without first filing a notice of claim and waiting for the Defendant to decide whether to pay the claim. Again, Plaintiffs argue that the bills of lading contain the nine–month claim filing requirement and are extrinsic documents that cannot be read into the Agreement. Defendant responds that Section 4A merely prescribes a remedy available to shippers and does not preclude the applicability of the nine–month claim limitation contained in the bills of lading.

On its face, Section 4A does not conflict with the Uniform Domestic Straight Bill of Lading and its nine month claim limitation despite its silence on a time limit within which to file claims. By its plain language it sets out a recourse available to the shipper who properly establishes claims against the carrier. As above, even viewed in the light most favorable to Plaintiffs, the bills of lading are subsequent contracts governing the specific

dispute and their terms do not conflict with the umbrella Agreement for Transportation's Section 4A.

Lastly, Plaintiffs argue that the Agreement does not expressly incorporate Milan Express's tariff and therefore the terms of the Uniform Straight Bill of Lading are inapplicable. The Defendant's tariff is mentioned only once, in Appendix C of the Agreement, which is entitled "Accessorials." The Appendix expresses the following:

> ACCESSORIALS:
> a. The CARRIER will waive any charges associated with the following:
>     1. Pick–up service on single shipments (outbound prepaid, inbound collect, third party.)
>     2. Furnishing copy of bill of lading with all outbound prepaid bills and copy of signed delivery receipt with all inbound collect bills.
>     3. Notification to consignee prior to delivery.
>     4. Reweighing charge.
>     5. No charge for dropping or spotting trailers.
> b. Any items not covered by this Agreement and its appendices will be subject to the carrier's Rules Tariff.

(App. A to Pl.'s Response.) Plaintiffs argue that since the tariff is mentioned in the appendix on "accessorials," part b. should be read to mean that any accessorial fees not specifically waived in part a. would be charged in accordance with the accessorial fee schedule contained in the Defendant's tariff. Defendant counters that Plaintiffs' argument ignores paragraph 13 of the Agreement which states that the "subject headings of the articles, sections and subsections of the Agreement are included for convenience only, and shall not affect the interpretation of any of its provisions." Under Defendant's interpretation, Milan Express's tariff is expressly incorporated into the Agreement for Transportation under part b of the accessorials appendix.

13

Regardless of whether the Agreement is read to mean that only accessorials not covered by the Agreement will be subject to Milan Express's Rules Tariff, as all parties have agreed that the bills of lading are subject to Milan Express's Rules Tariff, the nine–month claim limitation applies because the bills of lading govern the shipments at issue. Thus, the claims are untimely whether or not Milan Express's Rules Tariff is expressly incorporated in the Agreement for Transportation.

In sum, the Court concludes that the bills of lading are part of the parties' contractual relationship and their terms and conditions govern that relationship. As it is uncontested that Plaintiffs did not file sixty–two claims within the nine month deadline, Milan Express is entitled to summary judgment in its favor on those claims.

B.  Administration Fees

Milan Express moves for summary judgment as to the administration fees added by Plaintiffs to each of their seventy–four claims, totaling $7,692.18. As part of the Carmack Amendment, Congress expressly addressed the issue of a shipper's compensation. *See* 49 U.S.C. § 14706 (a)(1). Specifically, the Amendment states that any liability imposed is "for the actual loss or injury to the property" caused by the carrier. *Id.* The Carmack Amendment is "comprehensive enough to embrace all damages resulting from any failure to discharge a carrier's duty with respect to any part of the transportation to the agreed destination." *Southeastern Express Co. v. Pastime Amusement Co.*, 299 U.S. 28, 28–29 (1936).

The Amendment incorporates the existing common law rules for contract damages and recoverable damages are ordinarily measured by the reduction in market value at destination or by replacement or repair costs occasioned by the harm. *The Oneida*, 128 F.

687, 692 (2d Cir. 1904) (Wallace, J., concurring). The Carmack Amendment did not alter the common law rule that special, or consequential, damages are not usually recoverable in an action for breach of contract. *Contempo Metal Furniture Co. of California v. East Texas Motor Freight Lines Inc.*, 661 F.2d 761, 765 (9th Cir. 1981) ("Special damages are those that the carrier did not have reason to foresee as ordinary, natural consequences of a breach when the contract was made.").

Given that the broad goals of the Carmack Amendment are to provide uniformity in the disposition of claims brought under bills of lading and to eliminate uncertainty as to the scope of a carrier's liability, for a shipper to recover administration fees, a carrier would have to have notice of the special circumstances from which these damages would flow or contractually agree to these fees. *Contempo Metal Furniture Co.*, 661 F.2d at 765; *Starmakers Publ'g Co. v. Acme Fast Freight, Inc.*, 646 F. Supp. 780, 782 (S.D.N.Y. 1986). The common law of contracts suggests that since the fees are not directly included in the contract or market value of the goods, nor are they reasonably foreseeable, they should not be recoverable under the Carmack Amendment. *Contempo Metal Furniture Co.*, 661 F.2d at 765.

Defendant insists that it never agreed to be charged an administration fee on any of the seventy–four claims for which Royal Consumer seeks recovery (Def. Mot. at 13–15), which Plaintiffs acknowledge. (Pl.'s Loc. R. 56 (a) 2 Stmt. ¶¶ 36, 39, 42.) Furthermore, Plaintiff's corporate designee, Mr. Bernstein, acknowledged that he knew of no agreement with Milan Express for the administration fees. (Bernstein Dep. 49:25–50:3, 52:11–14).

Because Defendant neither had notice of nor agreed to the recovery of administration fees with any claims, Defendant is entitled to summary judgment in its favor as to administrative fees.

C. State Contract Claim Preemption

The second count of Plaintiffs' amended complaint asserts state law claims arising from the alleged intrastate shipment of goods. (Amended Compl. ¶ 9.) Defendant asserts that all seventy–four claims for which Plaintiffs seek recovery were for interstate shipments. The Carmack Amendment preempts state law claims arising from the interstate shipment of goods. *See Cleveland v. Beltman N. Am. Co.*, 30 F.3d 373, 378 (2d Cir. 1994); *Ensign Yachts, Inc. v. Arrigoni*, 2010 WL 918107, *6 (D. Conn. 2010); *Design X Mfg., Inc. v. ABF Freight Sys., Inc.*, 584 F. Supp. 2d 464, 467 (D. Conn. 2008).

Because Plaintiffs concede that none of the seventy–four shipments at issue were intrastate shipments, the Carmack Amendment preempts Plaintiffs' state law claims and Defendant is accordingly entitled to summary judgment in its favor on the second count of the Amended Complaint.

III. Conclusion

For the reasons stated above, Defendants Motion [Doc. # 40] for partial summary judgment is GRANTED.

IT IS SO ORDERED.

/s/
Janet Bond Arterton, U.S.D.J.

Dated at New Haven, Connecticut this 7th day of September, 2011.